NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0603n.06

No. 10-5446

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CHRISTY L. BOULIS-GASCHE,

      Plaintiff-Appellant.

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant-Appellee.

                                         /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

BEFORE:    CLAY and STRANCH, Circuit Judges, and BARRETT, District Judge.[*]

    **CLAY, Circuit Judge.**    Plaintiff Christy L. Boulis-Gashe appeals the district court's grant

of summary judgment to the Commissioner of the Social Security Administration in this action

challenging the Social Security Administration's denial of Plaintiff's application for social security

disability benefits.  For the reasons discussed below, the judgment of the district court is

**REVERSED in part**, the decision of the Social Security Administration **VACATED in part**, and

the case **REMANDED** to the Social Security Administration for further proceedings consistent with

this opinion.

---

[*]Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

**BACKGROUND**

In this appeal, Plaintiff challenges only the denial of disability benefits on account of her alleged mental disability from August 27, 2001 to December 31, 2005. Our discussion of the background of this case is limited accordingly.

## I. Factual Background

In August of 2001, Plaintiff Christy L. Boulis-Gasche was involved in a workplace accident when a stack of boxes fell on her neck and head. (CAR[1] at 593.) Plaintiff sought immediate medical treatment, but was discharged from the emergency room with no significant finding of injury. On September 14, 2001, Plaintiff visited Dr. Paul E. Hoffmann, M.D., with complaints of neck pain on her left side. Based on an examination, Dr. Hoffmann diagnosed her with "myofascial pain syndrome," which he believed to be caused by the work-related injury. (*Id.* at 594.) In 2002, an MRI revealed a tumor on the left side of Plaintiff's brain, and as a result, Plaintiff underwent a craniotomy. (*Id.*) Plaintiff was also diagnosed with a seizure disorder, and treated for that condition by Dr. Michelle Brewer, M.D., a neurologist. (*Id.*)

On December 18, 2002, after a neurological examination, Dr. Brewer recorded that Plaintiff "may have panic attacks," (*id.* at 487), and on April 9, 2003, that she had "panic attacks." (*Id.* at 485.) In a note dated January 7, 2004, Dr. Eugenio Vargas, the surgeon who removed the brain tumor in 2002, examined Plaintiff for seizures, slurred speech, and extreme anxiety and worry. (*Id.* at 493-94.)

---

[1]Citations to "CAR" refer to the Certified Administrative Record filed on appeal.

On June 22, 2004, Plaintiff saw Dr. Hoffmann, who prescribed Paxil to Plaintiff to assist with sleep problems, noting that Dr. Brewer previously had done the same. (*Id.* at 524.) On September 1, 2004, Dr. Brewer diagnosed Plaintiff with panic attacks. (*Id.* at 467-72.) Then, on September 24, 2004, Plaintiff saw Dr. Thomas E. Davis, M.D., a colleague of Dr. Hoffmann, who noted Plaintiff's complaints of fatigue, which she "believes is also possibly related to her seizure medications and possible effects of depression, for which she is being treated by Paxil." (*Id*. at 519; *see also id.* at 521 (further noting "patient's depression").)

On January 14, 2005, Plaintiff complained of anxiety and depression to Dr. Hoffmann, who prescribed Cymbalta. (*Id.* at 517.) Following an April 4, 2005 appointment, Dr. Hoffmann noted that Plaintiff "has been tried on several different things for mood, including Cymbalta and Paxil." (*Id.* at 511-12.) He further documented that "she is very depressed and her mood is under poor control. She has tried Cymbalta and Paxil without good relief. . . . I believe that she had a significant amount of anxiety contributing to her current symptomology," for which he prescribed Zoloft. (*Id.*)

On May 9, 2005, Plaintiff reported to Dr. Hoffmann that the Zoloft "made her more depressed and made her feel more in the dumps," and Dr. Hoffmann observed that "[s]he seems to be still very depressed." (*Id.* at 507.) Dr. Hoffmann provided Plaintiff with samples of Lexapro, and added that if Plaintiff's mood did not improve, he may consider a referral to Dr. Steve Sanders for evaluation. (*Id.* at 507-08.)

On June 15, 2005, Plaintiff complained to Theresa Thayer, a nurse in Dr. Brewer's practice, of mental slowness, nervousness, and shakiness, and indicated that the shakiness might be related to her seizure condition. (*Id.* at 619.) On June 20, 2005, Dr. Hoffmann noted that "Lexapro has been

3

working better for her[;] she has not really had any side effects with this medication, and has been feeling better." (*Id.* at 503-06). Dr. Hoffmann doubled her dosage of Lexapro "to help decrease some of the anxiety she is having." (*Id.* at 503.)

On August 15, 2005, Dr. Hoffmann noted that Plaintiff's "mood may be some better with Lexapro," but noted that Plaintiff "is having some anxiety" for which he would refer her to Dr. Sanders. (*Id.* at 610.) At that time, Dr. Hoffmann opined that Plaintiff's physical impairment would not allow her to tolerate even low work stress, noting that "depression" contributed to the severity of Plaintiff's symptoms and functional limitations. (*Id.* at 557-64.)

On October 5, 2005, Plaintiff saw Dr. Brewer, who noted that Plaintiff had recently seen a psychiatrist. (*Id.* at 617.) Dr. Brewer noted that Plaintiff "has been added another antidepressant and is on Lexapro and doxepin but does feel good on the medication. She has had trouble tolerating antidepressants in the past." (*Id.*) Dr. Brewer observed a "depressed affect," (*id.* at 617), and recommended continued psychiatric care, as well as the addition of the medication "Vistaril to [be] use[d] twice daily for nervousness and nausea as well as dizziness." (*Id.* at 618 (noting that Xanax would be prescribed if Vistaril proved ineffective).)

On October 10, 2005, Plaintiff saw Dr. Hoffmann who referred to his receipt of a note from Dr. Sanders, in which Dr. Sanders recommended an increased dosage of Lexapro. (*Id.* at 606-07.) In response to this note—which is not in the record—Dr. Hoffmann increased Plaintiff's dosage of Lexapro and indicated that he would like to refer her "back to Dr. Sanders for her mood." (*Id.*)

## II. Procedural History

On November 23, 2003, Plaintiff filed an application for social security disability insurance benefits with the Social Security Administration (the "Administration") pursuant to Title II and Part A of Title XVIII of the Social Security Act ("Act"). The Administration denied her claim on April 30, 2004, concluding that Plaintiff was "not disabled under our rules." (*Id.* at 51.) On August 23, 2006, an administrative law judge ("ALJ") conducted a hearing in which Plaintiff testified. (*Id.* at 43, 46-50.)

On January 26, 2007, the ALJ determined that Plaintiff failed to show that she was disabled on account of either a physical[2] or mental impairment during that time. As to mental impairment, the ALJ concluded that Plaintiff's "reported panic disorder is not a medically determinable impairment, and her situational anxiety/depression does not meet the 12-month durational requirement." (*Id.* at 27.) The ALJ explained:

> At the hearing, the claimant testified that she had panic attacks two to three times a month. However, there is nothing in the clinical or treatment notes to indicate that [Plaintiff] sought formal mental health treatment for reported panic attacks. Treatment notes indicate that Dr. Hoffman [sic] prescribed psychotropic medication in April 2005 for reported situational anxiety/depression, but that, with use of the medication, her mood was improved by June 2005.

---

[2]Because Plaintiff limits her appeal to the denial of her disability claim based on mental impairment, we do not consider the denial of her disability claim based on physical impairment. For purposes of background and context, however, we briefly summarize the ALJ's treatment of Plaintiff's alleged physical impairments. The ALJ concluded that the combination of Plaintiff's alleged physical impairments, namely "myofascial pain syndrome; bilateral carpal tunnel syndrome; [and] possible seizure disorder," would constitute a "'severe impairment.'" The ALJ nonetheless found that Plaintiff was not disabled within the meaning of the Act, because, on step four, the ALJ concluded that Plaintiff could perform a "full range of medium work," which would include the activities required of her prior employment as a computer-aided drafter.

(CAR at 27 (citing Ex. 23F).) The Appeals Council denied review on July 15, 2008.

On November 4, 2008, Plaintiff timely filed a complaint in the district court against the Commissioner, seeking review of the denial of social security disability benefits. Following the cross-filing of dispositive motions, on September 16, 2009, the assigned magistrate judge issued a report and recommendation ("R&R"), recommending that judgment be entered in favor of the Commissioner. Plaintiff filed timely objections to the R&R, which the district court overruled. On February 2, 2010, the district court entered judgment for the Commissioner. Plaintiff appeals.

## DISCUSSION

### I.    Legal Standards

We begin with the legal standard governing social security disability benefits, and then discuss the scope of our review of the denial of benefits. An individual is entitled to benefits under the Social Security Act if the individual is disabled. *See, e.g.*, 42 U.S.C. §§ 421(a)(1), 1382(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations at 20 C.F.R. § 1520 set forth a five-step sequential analysis to determine whether an individual is disabled, which we have summarized as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. Fifth, the ALJ determines whether, based on the claimant's residual

functional capacity, as well as his age, education, and work experience, the claimant
can make an adjustment to other work, in which case the claimant is not disabled.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).

Specifically, with regard to step two, the Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The regulations further state that the impairment "must have lasted or be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

An unsuccessful claimant may appeal the denial of disability benefits to the district court. We review *de novo* the decision of the district court. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). "The Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g). Even if this Court would decide the matter differently, the Commissioner's decision will be affirmed if supported by substantial evidence. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604-08 (6th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 604 (internal quotation marks and citations omitted); *see also McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (stating that substantial evidence is "more than a scintilla of evidence but less than a preponderance") (internal quotation marks and citation omitted).

II.     **Analysis**

As explained below, we conclude that the decision of the ALJ as to mental impairment is not supported by substantial evidence.  The case shall therefore be remanded to the Administration.

A.     **Substantial Evidence**

The ALJ made two findings as to Plaintiff's alleged mental impairments:  first, that Plaintiff's claimed panic disorder "is not a medically determinable impairment;" and second, that Plaintiff's "situational anxiety/depression does not meet the 12-month durational requirement" of the Act.  We conclude that neither of these findings is supported by substantial evidence.

1.     **Panic Disorder**

The ALJ concluded that Plaintiff's "reported panic disorder is not a medically determinable impairment," reasoning as follows:  "At the hearing, the claimant testified that she had panic attacks two to three times a month.  However, there is nothing in the clinical or treatment notes to indicate that the claimant sought formal mental health treatment for reported panic attacks." (*Id.* at 27.)  The ALJ's reasoning is flawed for two reasons, which together deprive the ALJ's conclusion of a substantial evidentiary basis.

First, the ALJ's conclusory statement that Plaintiff did not "seek formal medical treatment for her panic attacks" is contrary to the medical documentation in the record. A report dated April 9, 2003 from Dr. Brewer states that Plaintiff "has panic attacks," (*id*. at 485), and on September 1, 2004, Dr. Brewer references a diagnosis of "panic attacks" (or possible panic attacks, depending on one's interpretation of the medical record).  (*Id.* at 467.)  Plaintiff's medical records also note her

frequent doctor visits with complaints of anxiety, a psychological condition that may overlap with panic disorder.

Second, the ALJ erred in discounting Plaintiff's claimed mental impairment solely because she failed to seek formal treatment. We have held that a claimant's failure to seek formal mental health treatment is "hardly probative" of whether the claimant suffers from a mental impairment, *Burton v. Apfel*, 208 F.3d 212 (6th Cir. 2000) (table), and "'should not be a determinative factor in a credibility assessment'" relating to the existence of a mental impairment. *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation")).

## 2. Depression/Anxiety

The ALJ additionally concluded that Plaintiff's "situational anxiety/depression does not meet the 12-month durational requirement" of the Act. The ALJ properly recognized that under the regulations, an impairment "must have lasted or be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. In finding that the requirement was not satisfied in this case, the ALJ reasoned as follows in its entirety: "[t]reatment notes indicate that Dr. Hoffman [sic] prescribed psychotropic medication in April 2005 for reported situational anxiety/depression, but that, with use of the medication, her mood was improved by June 2005." (*Id.* (citing Ex. 23F).) This truncated reasoning overlooks evidence in the record, and is not supported by substantial evidence.

The ALJ selected "April 2005" as the commencement date of the 12-month because Dr. Hoffmann's "treatment notes indicate [that he] prescribed psychotropic medication in April 2005

9

for reported situational anxiety/depression." A start date of April of 2005, however, cannot be sustained based on a fair reading of the record. As early as September 24, 2004, treatment notes from Dr. Davis suggested that Plaintiff was being treated for depression with Paxil. (*Id.* at 519-21.) On January 5, 2005, Plaintiff complained of anxiety and depression to Dr. Hoffmann, who prescribed Cymbalta. (*Id.* at 517.) In prescribing Zoloft on April 4, 2005, the start date selected by the ALJ, Dr. Hoffmann specifically reported that Plaintiff "has tried Cymbalta and Paxil without good relief." (*Id.* at 511-12.)

Furthermore, the ALJ's selection of "June 2005" as the end date of the 12 month period, because Plaintiff's "mood was improved," is without a sound basis. In support of this assertion, the ALJ provides an unexplained citation to 55-page exhibit, but presumably relied on the only two pages of that exhibit that pertain to June of 2005. (*Id.* at 502-04.) Those two pages contain a report by Dr. Hoffmann relating to a June 20, 2005 visit by Plaintiff, and state in relevant part: "On her last visit, we . . . had placed her on Lexapro. The Lexapro has been working better for her, she has not really had any side effects with this medication, and has been feeling better." (*Id.* at 503.) Nowhere does this report state that Plaintiff's "mood was improved." Rather, when read in context of the entire report, and in light of Plaintiff's previous struggle with the side effects of psychotropic medications, Dr. Hoffmann's statement that Plaintiff was feeling "better" plainly relates to her past experience with side effects of psychotropic medications.

Even if Dr. Hoffmann's use of the word "better" referred to Plaintiff's mood, this word did not provide the ALJ with substantial evidence from which to find that Plaintiff's mental impairment had subsided. The ALJ made no inquiry into the degree of improvement, or from what baseline

10

Plaintiff had improved. Under the ALJ's logic, any improvement in one's mood, regardless of how small and from what level the individual improved, would defeat a claim of mental impairment. This cannot be so.

By concluding that some unspecified improvement in Plaintiff's mood cured any anxiety or depression that Plaintiff was experiencing, "the ALJ impermissibly substitute[ed] his own judgment for that of a physician." *McCain v. Dir., Office of Workers Comp. Programs*, 58 F. App'x 184, 193 (6th Cir. 2003). The ALJ's conclusion appears to be grounded in a myopic reading of the record combined with a flawed view of mental illness. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (noting that judges, including ALJs in social security cases, must resist the "temptation to play doctor"). Contrary to the ALJ's conclusion, it appears that Plaintiff may have continued to suffer from mental illness after June of 2005. For instance, during an appointment in August 15, 2005, Dr. Hoffmann noted that Plaintiff's "mood may be some better," but nonetheless noted the presence of anxiety and decided to refer Plaintiff to another doctor for an evaluation in that regard. (*Id.* at 610.) The ALJ does not even acknowledge this evidence.

### 3. Summary

Accordingly, because the decision of the ALJ regarding mental impairment is not supported by substantial evidence, that portion of the ALJ's decision is vacated, and the case remanded to the ALJ for further proceedings consistent with this opinion.[3]

---

[3]Our finding of a lack of substantial evidence is reinforced by the ALJ's failure to reference or otherwise explain the weight given to the medical opinions in the record about Plaintiff's alleged mental impairment, as required by 20 C.F.R. § 1527(d)(2). *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that ALJ's failure to adequately discuss medical opinions in the record "denotes a lack of substantial evidence") (internal quotation marks and citation omitted).

### B.       Instructions on Remand

On remand, the ALJ shall consider the entirety of the medical evidence in the record to determine whether Plaintiff was disabled during the relevant period on account of a mental impairment. Should the ALJ find that the record is not sufficiently developed to determine whether Plaintiff was disabled during the relevant period, the ALJ shall develop the record by taking additional evidence, which may include, for example, testimony from a medical expert.

We acknowledge Plaintiff's request in her brief that we impose a duty upon the ALJ to consult a mental health expert. Plaintiff concedes that neither the Act nor the regulations would impose such a duty, but argues that the duty is "implied . . . when the record contains evidence of a mental impairment but lacks a formal assessment of the claimants mental functioning." (Pl.'s Rep. at 5.) Plaintiff offers no controlling legal authority to support her argument, and for this reason we cannot conclude that the ALJ breached any such implied duty.

Nothing in this opinion, however, should be construed as preventing Plaintiff from requesting the appointment of a mental health expert on remand, or the ALJ from doing so *sua sponte*, to assist in the development of an adequate record upon which the ALJ may consider Plaintiff's application for disability benefits based on mental impairment.

---

As discussed above, the record contains relevant evidence from numerous physicians relating to mental impairment. The ALJ completely ignored this evidence. At minimum, the ALJ was required—but failed—to "determine how much weight is appropriate [to these medical sources] by considering a number of factors," including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id.* Even if the ALJ was disinclined to credit the treating physicians' opinions because, for instance, they were not sufficiently detailed or helpful, the ALJ breached its obligation to so state in the decision.

**CONCLUSION**

Accordingly, the decision of the district court is **REVERSED in part**, the decision of the

Social Security Administration **VACATED in part**, and the case **REMANDED** to the

Administration for further proceedings consistent with this opinion.