NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0452n.06

No. 14-3499

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CYNTHIA WINN,

     Plaintiff-Appellant,

v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant-Appellee.

FILED
Jun 15, 2015
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

BEFORE:    BOGGS, SILER, and CLAY, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Cynthia Winn appeals from the March 31, 2014 judgment of the district court affirming the Commissioner of Social Security's ("Commissioner") finding that Winn was not disabled within the meaning of the Social Security Act and was therefore ineligible for disability insurance benefits. Winn appeals only the Commissioner's denial of disability benefits on the basis of her alleged mental disability.

For the following reasons, we **REVERSE** the decision of the district court, **VACATE in part** the decision of the Social Security Administration, and **REMAND** the case to the Social Security Administration for proceedings consistent with this opinion.

## I. BACKGROUND

### A. Procedural History

On February 19, 2009, Winn filed a Title II application for Social Security disability insurance benefits ("DIB"), alleging that she had been disabled since March 3, 2008. The Social Security Administration denied Winn's claim initially and upon reconsideration. Winn requested a hearing, which was held on March 22, 2011. Winn testified at the hearing, as did impartial vocational expert Brian Womer. Following the hearing, an administrative law judge ("ALJ") determined that Winn was not disabled within the meaning of the Social Security Act.

Despite finding that Winn suffered from severe physical impairment related to degenerative joint disease, the effects of previous ankle surgery, and obesity, the ALJ determined that Winn retained the residual functional capacity ("RFC") to perform sedentary work. With regard to Winn's claimed mental impairment, the ALJ concluded that Winn had failed to meet the burden of proving that she suffered from "a mental impairment that has existed at a 'severe' level for a continuous period of at least 12 months." (R. 6, Certified Administrative Record, Page ID # 77.) In reaching this decision, the ALJ determined that the opinion of Winn's treating psychiatrist should not be afforded controlling weight. Since the Appeals Council declined to review the ALJ's decision, this decision represents the Commissioner's final determination.

Upon exhausting her administrative remedies, Winn sought judicial review of the Commissioner's decision in the United States District Court for the Southern District of Ohio. On January 22, 2014, a magistrate judge issued a report and recommendations, recommending that the ALJ's non-disability finding be vacated. The magistrate judge concluded that the ALJ did not adequately consider the opinion of Winn's treating psychiatrist and failed to recognize the "significant amount of evidence indicating Plaintiff has a severe mental impairment." (R. 14,

Report and Recommendations, Page ID # 910.)  Additionally, the magistrate judge determined that "[the ALJ] failed to properly consider any mental limitations in Plaintiff's RFC." (*Id.*)  The Commissioner filed objections to this report.  The district court agreed with the Commissioner, and, on March 31, 2014, affirmed the Commissioner's determination that Winn was not disabled, concluding that "the ALJ applied the correct legal criteria and the record as a whole contains substantial evidence to support the ALJ's decision."  (R. 17, Entry and Order, Page ID # 935.)  Winn timely appealed to this Court.

### B. Factual History

Winn claims her disability began on March 3, 2008.  At that time, she was fifty-three years old.  She suffers from diagnosed physical and mental impairments.  Her physical ailments include degenerative joint disease, degenerative disc disease, residual effects of an ankle fracture and subsequent corrective surgery, and obesity.  As this appeal challenges the ALJ's determination only as it relates to Winn's alleged mental disability, her mental health history is discussed in greater detail below.

#### 1. Mental Health Impairments

Winn reports a long family history of depression, with multiple family members who committed suicide.  She testified that she was diagnosed as being manic depressive in her twenties, and that she was more recently diagnosed as bipolar.  With respect to her symptoms, Winn reports having erratic mood swings and bouts of depression that cause her to isolate herself from other people and to have difficulty getting out of bed and eating.  During these bouts of depression, Winn stays in her apartment all day, avoids contact with other people, and stops maintaining her hygiene (she has gone nearly two weeks without bathing).  She testified that she hears voices saying negative statements to her, like that she is going to die.

Winn's medical records indicate that she has suffered from symptoms including insomnia, irritability, agitation, paranoia, anxiety, loss of interest in activities, episodic mood swings, difficulty controlling her anger, and occasional suicidal thoughts. Her medical records also indicate that the severity of these symptoms waxes and wanes.

At an initial diagnostic assessment performed on July 8, 2009, Winn was diagnosed with depressive disorder and alcohol abuse. She was assigned a Global Assessment of Functioning ("GAF") score of 55 and was referred for counseling and psychotherapy at Daymont Behavioral Health Services ("Daymont").[1] Following this assessment, Winn attended regularly scheduled appointments with both a psychologist and psychiatrist. She was prescribed psychotropic medication in mid-2009. As of December 14, 2010, Winn was taking three psychotropic medications: Depakote, Lexapro, and Xanax. Treatment notes from Daymont throughout 2009 and 2010 indicate that Winn continued to suffer from depression and anxiety during this time period, despite making progress and experiencing sporadic improvements.

### i. State Agency Evaluations

On March 5, 2009, prior to beginning her psychological treatment, Winn was examined by psychologist Mary Ann Jones at the request of the Bureau of Disability Determination. State agency psychologist Kristen Haskins reviewed the record on March 24, 2009 and evaluated Winn's mental functioning capabilities.

---

[1] The GAF scale rates an individual's "overall psychological functioning" from 0 to 100 at a given moment in time. This scale is meant to reflect an individual's "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at 34. An individual with a score of 51-60 is classified as having "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning." *Id.*

Dr. Jones determined that Winn suffers from dysthymic disorder, generalized anxiety disorder, and psychological factors affecting her physical condition. She assigned Winn a GAF score of 55 and determined that:

> Ms. Winn's mental ability to relate to others, including fellow workers and supervisors, is moderately impaired by her depression, anxiety, and her preoccupation with her medical limitations. She would be unable to relate sufficiently to coworkers and supervisors on any sustained basis (for two or more hours at a time), even to perform simple, repetitive tasks . . . . Ms. Winn's mental ability to understand, remember, and follow instructions is moderately impaired, and this is more so by her overall psychological condition than any cognitive limitations . . . . Her mental ability to withstand the stress and pressures associated with day-to-day work activity is judged as moderately impaired. Ms. Winn shows moderate mental limitations in the areas of relating and comprehension because of her depression, anxiety, and preoccupation with her medical limitations.

(R. 6, Certified Administrative Record, Page ID # 477.)

Dr. Haskins reviewed Winn's record and completed a mental residual functional capacity assessment. Dr. Haskins found that Winn was "markedly limited" in her "ability to interact appropriately with the general public." (*Id.* at 500.) She determined that Winn was "moderately limited" in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (*Id.*) She also found Winn to be "moderately limited" in her: (1) "ability to respond appropriately to changes in the work setting," (2) "ability to understand and remember detailed instructions;" (3) "ability to carry out detailed instructions;" (4) "ability to maintain attention and concentration for extended periods;" and (5) "ability to work in coordination with or proximity to others without being distracted by them." (*Id.* at 499-500.)

5

Following her review of the record, Dr. Haskins concluded that Winn "would be able to perform [simple repetitive tasks and] follow 1-2 step instructions in a static and non-public environment and [without] strict production or time demands." (*Id.* at 501.) She also found that "[Winn] would be able to interact [with] others minimally and superficially." (*Id.*) On September 15, 2009, state agency psychologist Alice Chambly reviewed the record and affirmed Dr. Haskins' findings.

### ii. Opinion of Treating Psychiatrist Amparo Wee

Winn began seeing psychiatrist Amparo Wee, M.D. in mid-2010, after her previous psychiatrist retired. In her interrogatories, Dr. Wee concluded that it was not "reasonably probable" that Winn "has been capable of functioning at a high enough level" to: (1) "respond appropriately to supervision, co-workers and customary work pressures;" (2) "withstand the pressure of meeting normal standards of work productivity and work accuracy without significant risk of physical or psychological decompensation or worsening of her physical and mental impairments;" (3) "sustain attention and concentration on her work to meet normal standards of work productivity and work accuracy;" (4) "understand, remember and carry out simple work instructions without requiring very close supervision;" (5) "behave in an emotionally stable manner;" (6) "maintain concentration and attention for extended periods (approximately 2 hour segments);" (7) "respond appropriately to changes in a routine work setting;" (8) "get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes;" (9) "sustain ordinary routine without special supervision;" (10) "work in coordination with, or in proximity to, others without being unduly distracted by them;" or (11) "accept instructions and respond appropriately to criticism from supervisors." (*Id.* at 702-06.)

Additionally, Dr. Wee opined that Winn had marked restriction in the activities of daily living, marked difficulties in maintaining social functioning, and marked "deficiencies of concentration, persistence or pace, resulting in failure to complete tasks in a timely manner (in work settings or elsewhere)." (*Id.* at 706-707.) According to Dr. Wee, Winn's ability to "understand, remember and carry out detailed, but not complex, job instructions" was fair and her ability to "understand, remember and carry out simple job instructions" was good. (*Id.* at 709.)

### 2. Employment History

Winn has previously worked as a receptionist, a parts sequencer, an auto inventory clerk, and a storage rental clerk. Her most recent job was as a parts sequencer at General Motors, where she worked for five years until the plant closed in 2008. Following the plant closure, Winn unsuccessfully sought employment and received unemployment benefits until April 2010. At the time of the ALJ hearing, Winn had no income and was being supported by her family.

## II. DISCUSSION

### A. Standard of Review

We review a district court's decision regarding social security benefits *de novo*. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). Appellate review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Id.*; *see* 42 U.S.C. § 405(g). The Commissioner's decision satisfies the substantial evidence requirement if the decision is supported by "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)).

## B. Legal Standards

Individuals may be eligible to receive disability insurance benefits from the Social Security Administration if they meet certain eligibility requirements. 42 U.S.C. § 423. One such requirement is that the individual be "under a disability," which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(a)(1)(D), 423(d)(1)(A).

Administrative law judges follow a five-step inquiry laid out in 20 C.F.R. § 404.1520 when determining whether to approve or deny disability benefits:

> First, plaintiff must demonstrate that she is not currently engaged in substantial gainful activity at the time she seeks disability benefits.
>
> Second, plaintiff must show that she suffers from a severe impairment in order to warrant a finding of disability. A severe impairment is one which significantly limits physical or mental ability to do basic work activities.
>
> Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.
>
> Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.
>
> For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (internal citations and quotation marks omitted) (formatting altered for clarity). The review is terminated if the Commissioner makes a dispositive finding at any stage of this inquiry. *Id.*

## C. Analysis

Winn raises two principal challenges to the ALJ's disability determination. First, Winn argues that the ALJ failed to adhere to the treating physician rule by impermissibly discounting the opinion of Winn's treating psychiatrist. Second, Winn argues that the ALJ erred by failing to find that Winn suffered from a severe mental health impairment.

### 1. The ALJ's Assessment of Winn's Treating Psychiatrist

The ALJ's determination that the opinion of Winn's treating psychiatrist should not be accorded controlling weight was not based on substantial evidence.

Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . ." 20 C.F.R § 404.1527(c)(2). The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." Soc. Sec. Ruling 96-2P, 1996 WL 374188 at *3 (July 2, 1996).

If an ALJ decides that the opinion of a treating source should not be given controlling weight, the ALJ must take certain factors into consideration when determining how much weight to give the opinion, including: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source . . . ." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Any decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2P, 1996 WL 374188 at *5 (July 2, 1996). This Court has explained that, in addition to facilitating meaningful review, this rule "exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (internal quotation marks omitted).

In this case, the ALJ determined that the opinion of Winn's treating psychiatrist, Dr. Wee, should not be given "controlling, or even deferential, weight." (R. 6-2, ALJ Decision, Page ID # 75.) The ALJ's decision to discount Dr. Wee's opinion was based on her conclusion that Dr. Wee's opinions are "not borne out by [Winn's] mental health treatment records." (*Id.* at 75.) The ALJ went so far as to say that Dr. Wee's opinion should be "rejected as being less than credible" and that "[i]t is entitled to little weight when viewed within the context of the entire record." (*Id.* at 76.)

To support this conclusion, the ALJ referenced excerpts from Winn's mental health treatment notes that suggest Winn was "getting out more," participating in some events, and making progress. (*Id.* at 75.) Namely, the ALJ's decision quoted the following statements from Winn's treatment notes:

- October [5], 2009 – claimant planning to attend a singles mixer;
- November [23], 2009 – attended the mixer and had a good time;

- November 30, 2009 – making good progress. Went to Alabama with a friend for the holiday and had a great time;

- June 8, 2010 – doing much better. Very involved in her church;

- July 13, 2010 – doing well. Feeling better. Appeared well and happy.

(*Id.*)

These half-sentences and phrases paint a misleading picture of Winn's mental health. The ALJ's skewed depiction improperly disregards significant portions of the specific medical notes from which these phrases were excerpted. Viewed in their entirety, these notes clearly indicate that Winn continued to suffer from mental ailments. *See Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) ("[F]ailure to consider the record as a whole undermines the Secretary's conclusion."); *see also Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980) ("Substantiality of the evidence must be based upon the record taken as a whole."). The following statements were made within the *same* treatment notes on the same dates as the phrases relied on by the ALJ:

- October 5, 2009 – "Client continues to present with depression, agorophobia (mild), tearfullness daily, fatigued frequently . . . . She needs to build up her self-esteem." (R. 6, Certified Administrative Record, Page ID # 677.)

- November 23, 2009 – "Client continues to present with depression, evidenced by isolation, fatigue." (*Id.* at 670.)

- November 30, 2009 – "Client continues to present with depression as evidenced by wanting to isolate, fatigue, feeling unmotivated . . . . She agreed to 2 social activities weekly. Assigned 2 social activities weekly, one can be church." (*Id.* at 665).

- June 8, 2010 – "Client continues to present with [symptoms] of depression as evidenced by fatigue, lack of motivation." (*Id.* at 770.)

11

- July 13, 2010 – "The client continues to present with [symptoms] of agitation, poor stress tolerance . . . Therapist and client processed her current stressors and depression." (*Id.* at 767.)

Beyond these selected comments, Winn's treatment record is laden with notes made by Winn's therapists classifying Winn as depressed and describing the symptoms of her depression and anxiety. (*See, e.g.*, *id.* at 655 (note from January 29, 2010, explaining that Winn was having problems at her church, "continue[d] to present with depression," and "was upset"); *id.* at 652 (note from March 9, 2010: "Client continues to present with [symptoms] of depression as evidenced by fatigue, lack of motivation, some agitation . . . . Therapist helped client challenge her cognitive distortions . . . . Client agreed to do her 3 activities per week."); *id.* at 648 (note from March 30, 2010: "Client continues to present with [symptoms] of depression as evidenced by fatigue, lack of motivation, some anhedonia developing . . . . Client said her interests were waning for her books and other things she used to love . . . . She feels down, presented as depressed, but stable."); *id.* at 641 (note from May 11, 2010: "Client continues to present with [symptoms] of depression as evidenced by not bathing in almost 2 weeks, appeared unkempt, a lot of fatigue, lack of motivation.").)

Nothing in the notes relied on by the ALJ, or in the notes not cited by the ALJ, contradicts or conflicts with Dr. Wee's opinion that Winn's mental functioning capabilities were markedly limited. The treatment notes indicate that Winn was consistently classified as depressed, that she was subject to mood swings, and that the intensity of her depression shifted episodically. (*See, e.g.*, *id.* at 643 ("The client presents differently from week to week, either very depressed or very happy, rarely in the middle.").) The ALJ emphasized treatment notes indicating that "[Winn's] mental condition showed improvement with appropriate treatment." (R. 6-2, ALJ Decision, Page ID # 72.) However, these notes in no way contradict Dr. Wee's general

assessment of Winn's mental health. The notes indicate progress and improvement from some previous baseline; they are not inconsistent with the conclusion that Winn's overall condition was such that she suffered from severe mental impairment. In fact, in the final treatment note on record before the ALJ, dated January 26, 2011, a therapist indicated that despite Winn's progress, she still experienced "major bouts of depression and can't always determine the reason for these." (R. 6, Certified Administrative Record, Page ID # 755.)

Moreover, given the documented episodic nature of Winn's mental ailments, it is unsurprising that she reported some better days and some worse days. It is notable that even during her "better" days, Winn's treatment notes continued to classify her as presenting as depressed, anxious, and agitated. By focusing exclusively on instances in which Winn appeared to be doing relatively well and by determining (as no pyschiatrist or psychologist had) that Winn has only "mild limitations" in her mental functioning, "the ALJ impermissibly substitut[ed] [her] own judgment for that of a physician." *McCain v. Dir., Office of Workers Comp. Programs*, 58 F. App'x 184, 193 (6th Cir. 2003). Such reasoning on the part of an ALJ "appears to be grounded in a myopic reading of the record combined with a flawed view of mental illness." *Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 494 (6th Cir. 2011) (vacating an ALJ's decision where the ALJ relied on indications of a claimant's relative improvement in determining that no mental impairment existed).

The ALJ seems preoccupied with discrete instances in which Winn participated in social activities, emphasizing Winn's church attendance, participation in a singles mixer, and two trips. However, the ALJ ignores the fact that Winn's participation in social activities was a prescribed part of her treatment. Moreover, Winn's participation in these activities does not constitute substantial evidence that Winn would be able to participate in *work* activities. "[An] ALJ's focus

on the claimant's ability to do certain activities in discounting the treating source's opinion does not constitute 'good reasons' for doing so when the claimant's testimony and other record evidence contradict the ALJ's finding." *Cole*, 661 F.3d at 939; *see also Rogers v. Comm'r of Soc. Sec*, 486 F.3d 234, 248 (6th. Cir 2007) (finding that activities such as driving, cleaning an apartment, caring for pets, reading, exercising, and watching the news "are not comparable to typical work activities").

Furthermore, "[t]he functional limitations of mental impairments are to be assessed" based on which activities the claimant can do "on a *sustained basis*." *Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 377 (6th Cir. 2013) (finding that a claimant's ability to "visit his aunt and uncle," "receive occasional visits from his neighbor," and "his ability to accompany his wife on [monthly] grocery-shopping trips" do not suggest that he would be able to "interact independently and appropriately with others on a sustained basis" and do not contradict the contrary opinion of his treating source). Winn's treatment records do not indicate that she was able to successfully participate in the activities identified by the ALJ on a sustained basis. The ALJ neglected to consider treatment notes describing that, despite participating in social activities at the instruction of her therapist, Winn continued to encounter difficulties in social contexts.

Dr. Wee's opinion was supported by the opinions of three psychologists who evaluated Winn or reviewed her records at the request of the Bureau of Disability Determination. Dr. Jones examined Winn on March 5, 2009 and Dr. Haskins reviewed the record on March 24, 2009. As previously discussed, both Dr. Jones and Dr. Haskins determined that Winn had moderate levels of limitations in her ability to understand, remember, follow instructions, relate to others, and withstand the stress and pressure of day-to-day work activity. Dr. Jones concluded that Winn

14

"would be unable to relate sufficiently to co-workers and supervisors on any sustained basis (for two or more hours at a time), even to perform simple, repetitive tasks." (R. 6, Certified Administrative Record, Page ID # 477.) Dr. Haskins concluded that Winn would only be able "to interact [with] others minimally and superficially." (*Id.* at 501.) She also determined that Winn would be moderately limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (*Id*. at 500.) With regard to Winn's ability to interact appropriately with the general public, Dr. Haskin's found her to be markedly limited. Dr. Chambly reviewed the record and affirmed Dr. Haskin's conclusions on September 15, 2009.

The ALJ ultimately rejected the opinions of these state psychologists as non-representative of Winn's condition following treatment. The invalidity of this rejection will be discussed below. However, for the purposes of determining whether the ALJ erred in discounting Dr. Wee's conclusions, it is relevant that Dr. Wee's opinion is consistent with the opinions of the state psychologists insofar as they identified similar functional limitations at degrees of seriousness that would qualify as "severe" for the purpose of determining disability. *See* Soc. Sec. Ruling 85-28, 1985 WL 56856 at *3 (1985) (stating that impairment is considered "severe" unless "the [claimant's] impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities").

In sum, the ALJ's decision to discount the opinion of Winn's treating psychiatrist was not supported by substantial evidence. Dr. Wee's opinion is consistent with other treatment notes in the record, which, despite acknowledging that Winn experienced improvement and had "good days," continuously indicated that Winn suffered from depression, mood swings, and anxiety.

"This Court has made clear that we do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion." *Cole*, 661 F.3d at 939 (internal quotation marks omitted). Accordingly, this case will be remanded to the Social Security Administration.

**2. The ALJ's Determination about the Severity of Winn's Mental Impairment**

The ALJ's conclusion that Winn did not suffer from a severe mental impairment that would limit her ability to perform work activity was not based on substantial evidence and constitutes reversible error.

**i. Severity of Winn's Mental Impairments**

As was mentioned above, an impairment is considered "severe" unless "the [claimant's] impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities." Soc. Sec. Ruling 85-28, 1985 WL 56856, at *3 (1985). We have previously observed that the claimant's burden of establishing a "severe" impairment during the second step of the disability determination process is a "*de minimis* hurdle." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "Under [this] prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.*

In this case, the ALJ concluded that Winn failed to establish that she suffered from a disability caused by her mental health impairments because she did not demonstrate that she had a "mental impairment that has existed at a 'severe' level for a continuous period of at least 12 months." (R. 6-2, ALJ Decision, Page ID # 77.) In so determining, the ALJ rejected the opinions of three state psychologists as being "non-representative of the claimant's longitudinal mental functioning capabilities" because Winn's medical records indicate that she "responded

favorably to psychological counseling and the use of psychotropic medication," which were prescribed only after the state assessments. (*Id.*)

First and foremost, as was discussed above, the ALJ's conclusion is explicitly contradicted by the assessment of Dr. Wee, Winn's treating psychiatrist. Dr. Wee determined that Winn suffered from significant functional limitations over a year after she began taking psychotropic medications. By concluding that the improvement experienced by Winn rendered her no longer "severely" impaired, the ALJ impermissibly substituted her judgment for that of Winn's treating psychiatrist. *See McCain*, 58 F. App'x at 193 ("[A]n ALJ is not free to set his own expertise against that of a physician who presents competent evidence.") (internal quotation marks omitted).

Moreover, the ALJ's determination that the opinions of the state psychologists should be discounted as "non-representative of [Winn's] longitudinal mental functioning capabilities" is inconsistent with Winn's medical records as a whole. Winn's treatment records strongly suggest a continuous severe mental impairment. On May 11, 2010, over a year after her first assessments by the state psychologists, a treatment note describes that Winn "continue[d] to present with [symptoms] of depression as evidenced by not bathing in almost 2 weeks, appeared unkempt, a lot of fatigue, lack of motivation." (R. 6, Certified Administrative Record, Page ID # 641.) A treatment note from March 30, 2010 reports: "Client said her interests were waning for her books and other things she used to love . . . . She feels down, presented as depressed, but stable." (*Id.* at 648.) Despite stating that Winn was "making definite progress," an April 13, 2010 medical note describes the persistence of Winn's mood swings: "The client presents differently from week to week, either very depressed or very happy, rarely in the middle." (*Id.* at 643). On January 26, 2011, nearly two years after the state psychologists' assessments, Winn's

therapist observed that "[Winn] still has major bouts of depression and can't always determine the reason for these." (*Id.* at 755.)

Although Winn's medical records suggest that her treatment was helping her, the ALJ had no basis for the determination that Winn's mental impairments had subsided to the point that they were no longer severe. Most of the comments in Winn's notes regarding her improvement are relative rather than absolute. The ALJ repeated multiple times that Winn's notes indicated she was "getting out more" and had "made a lot of progress." (R. 6-2, ALJ Decision, Page ID # 72, 75 and 76.) However, what matters for the purposes of Winn's functional limitation determination is Winn's overall state, not the mere fact that treatment was helping. Nothing in the notes cited by the ALJ supports the conclusion that Winn's degree of improvement from her previous baseline rendered her only mildly impaired. *See Boulis-Gasche*, 451 F. App'x at 494. ("The ALJ made no inquiry into the degree of improvement, or from what baseline Plaintiff had improved. Under the ALJ's logic, any improvement in one's mood, regardless of how small and from what level the individual improved, would defeat a claim of mental impairment. This cannot be so.")

The opinions of the three state psychologists in March and September of 2009 and that of Dr. Wee in August 2010, as well as a large volume of medical notes in the interim period indicating the persistence of Winn's mental impairments, are uncontradicted by any other evidence in the record. The ALJ's determination that Winn did not suffer from a 'severe' mental impairment is therefore not based on substantial evidence.

### ii. Reversible Error

An ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ determines that a claimant has at least one other severe

impairment and continues with the remaining steps of the disability evaluation. *Maziarz v. Sec'y of Health & Human Servs*., 837 F.2d 240, 244 (6th Cir. 1987). This rule is predicated on the notion that the ALJ "properly could consider claimant's [non-severe impairments] in determining whether claimant retained sufficient residual functional capacity to allow [her] to perform substantial gainful activity." *Id.* In this case, despite concluding that Winn did not have a severe mental impairment at step-two of the ALJ's five-step sequential evaluation process, the ALJ determined that Winn suffered from a severe physical impairment. Having determined that Winn suffered from such an impairment, the ALJ continued to step-four of the evaluation process before determining that Winn was not disabled. However, the ALJ's step-four determination regarding Winn's RFC did not consider Winn's mental impairments in a meaningful way. Accordingly, as the magistrate judge recommended, we are unable to conclude that the ALJ's error "falls within the parameters of *Maziarz.*" (R. 14, Report and Recommendations, Page ID # 910.) This error therefore requires reversal.

## III. CONCLUSION

For the foregoing reasons, we **REVERSE** the decision of the district court, **VACATE** i**n part** the decision of the Social Security Administration, and **REMAND** the case to the Social Security Administration for proceedings consistent with this opinion.