NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Case No. 17-4182

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Jun 04, 2018

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LYNDA ANN PERRY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: COOK and DONALD, Circuit Judges; and HALE, District Judge[*]

**BERNICE BOUIE DONALD, Circuit Judge.** Plaintiff-Appellant Lynda Ann Perry challenges the district court's decision to uphold Defendant-Appellee Commissioner of Social Security's ("Commissioner") denial of her application for Social Security disability insurance benefits ("DIB"). We **AFFIRM**.

## I.

As of the alleged onset of her disability, Perry was forty-five years old. In September 2012, Perry filed an application for DIB, alleging that she had been disabled since September 24, 2012. The Social Security Administration ("SSA") denied her claim initially and upon reconsideration.

---

[*] The Honorable David J. Hale, United States District Judge for the Western District of Kentucky, sitting by designation.

On June 24, 2013, Perry filed a written request for a hearing. A hearing was held on November 21, 2014, at which Perry testified.

Perry indicated that she had coronary artery spasms, severe arthritis in her left shoulder, H. pylori (a bacterial infection in the stomach), sleep apnea, and a pacemaker. Her cardiovascular issues were treated by Dr. Frederick A. Heupler. She testified that she took channel blockers, beta blockers, and nitroglycerin to help with the pain from her daily coronary artery spasms. Perry testified that she was able to prepare meals, vacuum once a week, but that she could not do stairs or sit around for long periods of time. She also presented medical evidence showing that she was first diagnosed in December 2009 with variant angina.[1] In 2011, she presented to the emergency room for chest pain, which was relieved by nitroglycerin; a similar episode occurred in Dr. Heupler's office a few months later. Perry was hospitalized several times between 2011 and 2012 for chest pain. In an August 2012 follow-up visit, Dr. Heupler noted that nitroglycerin "always relieves her chest pain." An August 2012 cardiac catherization and angiogram revealed that she was negative for coronary spasm, but she suffered from H. pylori and chronic esophagitis and gastritis, leading Dr. Heupler to conclude that her chest pain was likely gastroenterological in origin.

Perry stopped working in September 2012. Dr. Heupler saw her in October 2012, when Perry indicated her pain was so severe she doubled over, but noted it was still relieved by nitroglycerin. Her pacemaker was installed in January 2013, to allow her to continue to take certain medications. Perry continued to exhibit similar issues throughout 2013 and 2014 but continued to indicate that her angina was responsive to nitroglycerin. In June 2014, she underwent a stress

---

[1] "Variant angina . . . is due to severe spasm of a coronary artery, causing ischemia of the heart wall[.]" 20 C.F.R. pt. 404, subpt. P, app. 1 § 4.00E(6).

echocardiogram test. There was a difference between two reports, one that estimated Perry's functional capacity at 6 metabolic equivalents ("METs"), one at 4.3 METs.

At the hearing, two state agency physicians reviewed the record and concluded that Perry could perform a limited range of light work. Dr. Heupler wrote two letters advising that Perry was "severely incapacitated and unable to work" due to her coronary spasms and angina. A vocational expert ("VE") considered an individual similar to Perry and concluded that such an individual could not perform Perry's past work but could perform light work as an informational clerk, document preparer, order clerk, or doing table work.

An administrative law judge ("ALJ") concluded that Perry "ha[d] not been under a disability within the meaning of the Social Security Act (the "Act") from April 1, 2014, through the date of th[e] decision."[2] The ALJ concluded that Perry had the following severe impairments: coronary artery spasms, angina, bradycardia, status post pacemaker implantation, osteoarthritis of the left shoulder, H. Pylori, sleep related breathing disorder, and obesity. Despite that, the ALJ determined that Perry retained the residual functional capacity ("RFC") to perform sedentary work. As part of his conclusions, the ALJ declined to afford controlling weight to Perry's treating physician. The ALJ denied benefits, finding that Perry was not disabled under the meaning in the Social Security Act, and the appeals council denied Perry's request for review.

Perry sought review in the United States District Court for the Northern District of Ohio. The parties consented to jurisdiction under a magistrate judge, who determined that there was sufficient evidence to support the ALJ's conclusion that Perry's RFC did not limit her from performing sedentary work. Perry filed a timely appeal.

---

[2] As noted by the Commissioner, the ALJ erroneously stated the onset date as April 1, 2014, rather than September 24, 2012. Perry did not raise this issue. The ALJ nonetheless considered evidence from the appropriate time period, and so this error is harmless.

**II.**

We review de novo an appeal from a district court's order concerning a denial of benefits. *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 957 (6th Cir. 2015). The plaintiff has the burden of proving a disability within the meaning of the regulations. *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016). Our review of the ALJ decision "is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is 'substantial evidence' in the record to support the findings." *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 174 (6th Cir. 2009). "The substantial-evidence standard is met if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). However, we "will not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Stankoski v. Astrue*, 532 F. App'x 614, 618 (6th Cir. 2013) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)). We may affirm even if the record could support differing conclusions. *Hernandez*, 644 F. App'x at 473.

The SSA follows a five-step sequential process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a). "Disability" under the Social Security Act is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The ALJ looks to "all material facts" to determine whether a claimant is disabled. *Walker v. Sec'y of Health and Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992) (citing 20 C.F.R. § 404.1520(a)).

**III.**

Perry raises four challenges to the ALJ's determination that she is not disabled under the meaning of the Act. First, she argues that the district court erred in considering the wrong version of 20 C.F.R. pt. 404, subpt. P, app. 1 § 4.04 ("Listing 4.04"). She further argues that the ALJ did not afford proper weight to the opinions of Dr. Heupler, her treating physician, in determining her RFC. She also challenges the ALJ's assessment of her fatigue-related limitations and the ALJ's calculation of her stress echocardiogram test in considering her functional capacity.

**A.**

Perry's first argument is erroneous because she asks us to review the district court's decision, rather than that of the ALJ. *See Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 341 (6th Cir. 2008) (citation omitted) ("The standard of review is not whether substantial evidence supports a finding made by the District Court but whether substantial evidence supports a finding made by the [ALJ]."). Perry argues that the district court's citation of a superseded version of Listing 4.04 requires reversal. Perry misstates this Court's standard of review, and she makes no argument that the ALJ considered the incorrect version of Listing 4.04. Absent any argument on appeal regarding the ALJ's use of the correct legal standards supported by substantial evidence, we have nothing to consider on this issue. *See Kidd*, 283 F. App'x at 341.

**B.**

Citing to a single case, Perry argues that the ALJ failed to give proper weight to her treating physician's opinions. *See Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315 (6th Cir. 2015). The treating physician rule requires the ALJ to assign a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinic and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R.

§ 404.1527(c)(2); *Turk v. Comm'r of Soc. Sec.*, 647 F. App'x 638, 640 (6th Cir. 2016). Where an ALJ does not give controlling weight to a treating source opinion, it weighs that opinion in light of the regulations, using the factors in 20 C.F.R. § 404.1527(c)(2)-(6). This does not require an "exhaustive, step-by-step analysis," but merely "good reasons" for the ALJ's weighing of the opinion. *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) (citation omitted).

In *Winn*, this Court reversed an ALJ's determination that a treating physician's opinion was not entitled to controlling weight. 615 F. App'x at 320-24. The Court found that it was error for the ALJ to rely only on "selected comments" by a treating physician to discount his overall opinion, where consistent treatment notes and evidence existed that the claimant could not work on a sustained basis. *Id.* at 321-22. The Court concluded that "the ALJ's decision to discount the opinion of [claimant's] treating physician was not supported by substantial evidence" and the treating physician's "opinion [was] consistent with other treatment notes in the record . . . ." *Id.* at 324.

Perry fails to point to how the ALJ's decision here is comparable to *Winn*. The ALJ accorded little weight to Dr. Heupler's opinions regarding Perry's inability to work. Substantial evidence supports that opinion. The ALJ properly discounted Dr. Heupler's opinions that "encroached" on issues that are expressly reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Turk*, 647 F. App'x at 640 ("[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." (quoting *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014)). Moreover, the ALJ specifically used Dr. Heupler's treatment notes as contradicting his overall opinion that she was disabled and unable to work. The ALJ pointed to Dr. Heupler's June 2013 and November 2014 letters, each of which say that Perry is "severely incapacitated" and "unable to work" because of chest pain and angina. (R. 14, PageID

# 600.) Yet, the ALJ noted that Dr. Heupler's medical notes indicated repeatedly that Perry's angina was well-controlled by medications. Substantial evidence supports this conclusion: clinical notes confirmed that Perry's angina responded to nitroglycerin and high-dose calcium blocker therapy—contradicting Dr. Heupler's broad generalization that Perry was unable to work. The ALJ considered the full alleged period of disability, and Perry fails to cite to any additional evidence undermining the ALJ's decision to afford Dr. Heupler's opinions little weight. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation omitted) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

The ALJ provided sufficient "good reasons" to assign less weight to Dr. Heupler's opinion. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2) (requiring an ALJ to "always give good reasons" for the weight afforded to a treating physician)).

## C.

Perry argues that the ALJ misattributed her complaints of fatigue and therefore failed to evaluate the limiting effects of her fatigue. The Commissioner contends that the ALJ took Perry's subjective complaints of fatigue into account when the ALJ limited her to sedentary work. It is true that the ALJ acknowledged Perry's complaints of fatigue. Perry has not set forth any medical proof or issue of law that corroborates a disabling period of fatigue beyond that which has been accounted for. The ALJ was not required to accept her subjective statements absent additional proof in the record. *See* 20 C.F.R. § 404.1529(a). Other than bald assertions and intermittent citations to Perry's subjective testimony, Perry fails to support her claim that the ALJ failed to properly consider her fatigue in determining her RFC.

**D.**

Perry next argues that the ALJ misattributed Perry's claims of fatigue as being a side effect of her taking nitroglycerin, rather than properly considering the limiting effects of her fatigue. The ALJ considered Perry's subjective complaints of fatigue and found them not to be credible. "[W]e are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). As to this issue, the ALJ concluded the following:

> [Perry] testified that she has coronary artery spasms for which she takes Nitroglycerin. She testified that the medication makes the pain go away but that she is exhausted for 3-4 hours. However, when she saw Dr. Heupler in November 2014, she did not endorse fatigue or exhaustion secondary to the nitroglycerin. She reported that the angina responds to the nitroglycerin and rapidly goes away but mentioned no side effects[.]

(R. 14, PageID # 81.)

Yet, the ALJ did consider Perry's fatigue in assessing her RFC, limiting her to sedentary work, rather than the modified range of light work suggested by the state agency physicians. Perry points to no medical evidence in the record supporting her claim that fatigue had a disabling effect or had another cause that the ALJ should have considered. The ALJ was not required to accept Perry's subjective allegations regarding her fatigue, particularly where there is no evidence Perry points to that support greater limitations than found by the ALJ. *See Jones*, 335 F.3d at 476.

**E.**

Finally, Perry argues that the ALJ (and subsequently, the district court) erred in relying on her misleading stress echocardiogram in determining her RFC. Perry contends that her functioning level was lower than indicated. Once again, Perry's arguments are mostly underdeveloped. Perry appears to argue that the ALJ failed to support the findings of Perry's RFC with substantial

evidence because the ALJ cited an "uncompleted stress test" showing a MET level of 6, where Plaintiff's functional MET level was 4.3. In his decision, the ALJ discussed a report from a June 2014 stress echocardiogram test.

While Perry is correct that the record shows two reports with different MET levels, she fails to show how the ALJ's assessment of her functional level led to an RFC finding that was unsupported by substantial evidence. This Court has noted that sedentary tasks, like those which the ALJ concluded Perry can perform, "ordinarily have a metabolic equivalent of 2 to 4 METs." *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (citation omitted). The ALJ's determination of Perry's RFC—that she is capable of performing sedentary work—was supported by substantial evidence.

## IV.

We conclude that the ALJ's decision to deny Perry's application for DIB was supported by substantial evidence and thus **AFFIRM** the judgment of the district court.