NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0922n.06

No. 14-1110

**FILED**
Dec 11, 2014
DEBORAH S. HUNT, Clerk

### UNITED STATES COURTS OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DOUGLAS B. BLAIM, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| COMMISSIONER OF SOCIAL SECURITY, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:     BOGGS, ROGERS, and STRANCH, Circuit Judges.

ROGERS, Circuit Judge.  Douglas Blaim sought supplemental security income benefits in 2010 based on his chronic back pain, high blood pressure, and chronic obstructive pulmonary disease.  The Social Security Administration denied his application. An administrative law judge affirmed the Administration's denial and a district court affirmed the administrative law judge. Blaim appeals, arguing in part that the administrative law judge erred in giving little weight to the opinion of a state-agency medical consultant.  The ALJ could give less weight to that opinion, however, because the consultant did not have all the available evidence before him and his opinion was contrary to objective evidence compiled by other doctors who actually examined Blaim.  Blaim's other arguments also lack merit.  The district court therefore properly upheld the agency determination that Blaim was not disabled.

Blaim filed an application for supplemental security income (SSI) on May 17, 2010, alleging disability beginning June 28, 1998. The Social Security Administration (SSA) denied benefits and Blaim appealed to an administrative law judge (ALJ). The ALJ affirmed the SSA's denial, concluding that, ailments notwithstanding, Blaim could perform jobs that existed in significant numbers in the national economy. In so concluding, the ALJ explicitly accorded little weight to the opinion of Dr. Charles Edmonds, a state-agency medical consultant, who had opined that Blaim's medical conditions significantly limited the kind of work he was able to perform. The ALJ carefully explained his decision not to give much weight to Dr. Edmonds' opinion, noting that the opinion was not based on the full record or a personal examination of Blaim. The ALJ also gave little weight to much of Blaim's own testimony, deeming it incredible. In particular, the ALJ noted that parts of Blaim's testimony were contradicted by the record, and that Blaim's conservative treatment schedule and persistent refusal to take his medications or quit smoking—as his doctors repeatedly advised—suggested that his condition was not as serious as Blaim made it out to be. Finally, the ALJ determined, based on testimony by a vocational expert, that someone with Blaim's ailments—not necessarily all of the ailments Blaim claimed, but all of the ailments the ALJ found were credible and supported by the record—could perform jobs that were available in significant numbers in the national economy. Based on that finding, the ALJ affirmed the SSA's denial of SSI.

Blaim appealed the ALJ's decision to the district court below, which referred the matter to a magistrate judge. The magistrate judge issued a report and recommendation that largely tracked the ALJ's reasoning and recommended affirming the ALJ's decision. Blaim objected to the magistrate judge's report, but the district court ultimately adopted it in full, finding that

Blaim's objections merely reiterated arguments addressed and properly rejected by the magistrate judge.

Blaim appeals the district court's decision on three grounds. First, he argues that the ALJ erred in giving little weight to Dr. Edmonds' opinion. Second, he contends that the ALJ erred in finding his testimony not to have been credible. Third, he asserts that the ALJ erred in concluding there was other work in the national economy someone like Blaim could perform.

There are at least two reasons why the ALJ did not err in giving little weight to Dr. Edmonds' initial disability determination. First, Dr. Edmonds' determination was not based on all of the available evidence. Most notably, Dr. Edmonds did not review Blaim's lumbar and cervical spine x-rays from May 2008. Blaim maintains that, because those x-rays revealed some abnormalities in his spine, they could only have bolstered Dr. Edmonds' determination. But if Dr. Edmonds had seen the x-rays, he might have concluded that the "mild" or "small" abnormalities shown in the x-rays could not cause the severe disability of which Blaim complained. The ALJ, in turn, might reasonably have considered that possibility in evaluating Dr. Edmonds' initial disability determination. In *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009), for example, we held that an ALJ, without considering treatment records, should not accord greater weight to opinions of state agency physicians that were "not based on a review of a complete case record."

The decision not to give much weight to Dr. Edmonds' determination is further supported by the fact that Dr. Edmonds' conclusion ran counter to the objective evidence compiled by most of the doctors who personally examined Blaim. Social Security Administration regulations direct administrators to give more weight to the opinions of treating physicians than to the opinions of non-treating sources, and to give more weight to the opinions of sources who have

actually examined the claimant than to the opinions of sources who have not done so. 20 C.F.R. 416.927(d)(1)-(2). Doctor Edmonds did not personally examine or treat Blaim. A majority of the doctors who did examine and treat Blaim concluded, based on a variety of diagnostics, that Blaim's spinal problems were only mild and that his COPD could be controlled—or at least significantly limited—with medication. For instance, Dr. Gregory Berger found that Blaim's COPD was asymptomatic with medication, that Blaim responded well to treatment, and that Blaim had no spinal tenderness. Likewise, when Dr. Manuel Sklar examined Blaim, he found that Blaim had no hip tenderness and that Blaim's COPD was stable with medication. And, after his examination of Blaim, Dr. Phillip Kaplan opined that Blaim had a good exercise walk distance and only mild COPD. While these professionals' conclusions contradicted Blaim's self-reports, they were corroborated by objectively reliable indicators, including x-rays and strength and sensitivity tests. Under those circumstances, the ALJ could appropriately give little weight to Dr. Edmonds' initial disability determination. *See* 20 C.F.R. 416.927(d)(3).

Evidence also supported the ALJ's decision not to credit all of Blaim's testimony. For example, objective evidence from Blaim's earlier medical examinations showed that he could walk much farther than he reported at the hearing. Blaim's persistent noncompliance with his medication and his persistent disregard of his doctors' advice, moreover, suggested that his conditions were not as severe as he made them out to be. *See Sias v. Sec'y of HHS*, 861 F.2d 475, 480 (6th Cir. 1988) (per curiam); *Hardaway v. Sec'y of HHS*, 823 F.2d 922, 927 (6th Cir. 1987); *see also* 20 C.F.R. § 404.1530; 20 C.F.R. § 416.930. Even the mildness of Blaim's treatment—mostly pain medication, weight loss, and exercise—suggested that his ailments were comparatively mild. *See Villareal v. Sec'y of HHS*, 818 F.2d 461, 463 (6th Cir. 1987). Blaim argues that none of these facts is independently sufficient to support the ALJ's credibility

determination, but that mischaracterizes the relevant inquiry, which is based on the case record as a whole. As this court has noted, "[w]henever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints *based on a consideration of the entire case record*." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (emphasis added and internal quotation marks omitted). Viewed together—and in light of the entire case record—the facts identified by the ALJ adequately supported his credibility determination.

Finally, substantial evidence supports the ALJ's finding that, at the time of the hearing, there was other work in the economy that Blaim could perform. John Stokes, a vocational expert, testified that someone of Blaim's age, education, work experience, and health status could perform unskilled work as a courier or as an information clerk or office helper, and that 5,200 of those jobs existed in Michigan and 195,000 existed nationally. A vocational expert's testimony can supply substantial evidence so long as the assumptions underlying that testimony accurately reflect the claimant's physical and mental impairments. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

Blaim argues the ALJ should not have relied on Stokes's testimony because it did not reflect certain evidence in the record. First, Blaim contends that Stokes improperly ignored Dr. Edmonds' finding that Blaim was restricted to sedentary work. The ALJ, however, was not required to compel Stokes to consider findings or limitations that the ALJ himself had determined were not credible or worthy of significant weight. *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1234-35 (6th Cir. 1993). Blaim also argues that Stokes's assessment improperly ignored Blaim's own testimony about alleged limitations in using his hands and arms. But other parts of

Blaim's testimony—for instance, his admissions that he could use his computer, water his garden, cook, clean, do laundry, drive a car, and shop for groceries—might reasonably be perceived as undermining the claim that his alleged limitations in using his hands and arms were significant. The ALJ was accordingly not required to have Stokes consider the employment prospects of someone with Blaim's claimed limitations.

The district court's judgment affirming the denial of benefits is affirmed.