NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0505n.06

No. 14-5968

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 16, 2015
DEBORAH S. HUNT, Clerk

RUBY WILSON,                                    )
                                                )
        Plaintiff-Appellant,                    )
                                                )       ON APPEAL FROM THE UNITED
v.                                              )       STATES DISTRICT COURT FOR
                                                )       THE WESTERN DISTRICT OF
COMMISSIONER OF SOCIAL SECURITY,                )       TENNESSEE
                                                )
        Defendant-Appellee.                     )
                                                )

        BEFORE: BOGGS, SUHRHEINRICH, and WHITE, Circuit Judges.

        PER CURIAM. Ruby Wilson appeals the district court's judgment that affirmed the

denial of her applications for disability-insurance benefits and supplemental-security-income

benefits.

        In 2009, Wilson filed applications for disability insurance benefits and supplemental

security income benefits, alleging that she became disabled on October 1, 2007. After the Social

Security Administration denied the applications, Wilson requested a hearing before an

administrative law judge (ALJ). The ALJ denied Wilson relief, and the Appeals Council

declined to review the case. The district court affirmed the denial of Wilson's applications.

        On appeal, Wilson argues that the ALJ erred by failing to afford controlling weight to the

opinion of her treating physician and by otherwise failing to properly weigh the medical opinion

evidence. Wilson further argues that the ALJ erred by failing to consider all of her impairments,

by failing to address whether she met certain regulatory listings, by concluding that her

testimony was not credible, and by failing to confirm that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles. "Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "The substantial-evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Id.* at 406 (internal quotation marks omitted). "We give de novo review to the district court's conclusions on each issue." *Id.*

First, Wilson argues that the ALJ erred by failing to afford controlling weight to the medical opinion of Dr. Volker Winkler, who concluded that Wilson had severe functional limitations. Wilson also argues that the ALJ failed to give valid reasons for disregarding Dr. Winkler's opinion and relying on the contrary opinions of Dr. John Woods and the state agency medical consultants.

A physician qualifies as a treating source if the claimant sees the physician with a frequency consistent with accepted medical practice for the type of treatment or evaluation that is required for the medical condition. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). A medical opinion from a treating source must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). In contrast, opinions from non-treating and non-examining sources are never assessed for controlling weight. *Id.* Instead, the ALJ must consider such opinions based on all relevant factors, including the examining relationship or lack thereof, the specialization of the medical source, and the consistency and supportability of the opinion. *Id.*

The ALJ did not err by failing to consider Dr. Winkler as a treating source, given that Dr. Winkler never examined Wilson and provided only a single physical-capacity evaluation. *See Smith*, 482 F.3d at 876. Moreover, the ALJ properly considered Dr. Winkler's opinion when assessing Wilson's residual functional capacity. The ALJ disregarded Dr. Winkler's opinion in part because it was based on "new complaints of shoulder problems," which had not been present for at least twelve consecutive months and therefore did not meet the durational requirement of the Social Security Act and its implementing regulations. But Wilson contends that the ALJ erred by not addressing whether the shoulder problems could be expected to last for at least twelve months. *See Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 493 (6th Cir. 2011) (noting that, to meet the durational requirement, an impairment must have lasted or be expected to last for a continuous period of at least twelve months).

However, it is clear from the medical record that the ALJ's reference to "new" shoulder pain was a misstatement. On January 13, 2011, Wilson underwent a medical examination at McKenzie Medical Center. The treatment note reported: "Symptoms include neck pain and muscle spasm . . . . Symptoms are located in the entire neck. The pain radiates to the left shoulder and right shoulder. The patient describes the pain as sharp and aching." At the behest of Wilson's attorney, Wilson later went to the office Dr. Winkler at McKenzie Medical Center on July 25, 2011. Beth Riddle, a nurse practitioner with Dr. Winkler, conducted a medical history and examination. Her treatment note stated: "Symptoms include neck pain and muscle spasm . . . . Symptoms are located in the entire neck. The pain radiates to the left shoulder and right shoulder. The patient describes the pain as sharp and aching."

It is evident by the language in both treatment notes that Wilson made *identical* complaints of shoulder pain in both January and July. And these indistinguishable complaints

were specifically addressed by the ALJ in her decision. The ALJ first stated that Wilson "presented to McKenzies (sic) Medical Center January 2011 with subjective complaints of pain in the neck, *shoulders*, and back." The ALJ further stated that Wilson's "representative obtained a new consultative examination report from Volker Winkler, MD who essentially reported the claimant was limited to less than sedentary work with new complaints of shoulder problems." Although the ALJ does describe the July 2011 shoulder pain as "new," as explained above, the medical record contradicts that description. In fact, the only indication that this pain is distinct from the January 2011 shoulder pain comes from a statement made by Wilson's counsel during a July 20, 2011 hearing before the ALJ. This exchange occurred during the attorney's examination of Wilson:

Q. I wanted to ask you a little bit about your neck, and your shoulder. I think your shoulder's a little more recent. You have some shoulder problems. Is that correct?

A. Yes. [INAUDIBLE]

Q. Where you going for therapy?

A. I go to Regional Hospital.

Q. Okay. And that's a, kind of, a new thing?

A. Yes.

The attorney asked these questions with no medical background or personal proof by Wilson to substantiate his leading question. Perhaps this caused the ALJ to refer to a "new" shoulder problem.

Additionally, and perhaps more to the point, the ALJ had substantial evidence on which to base her decision to afford Dr. Winkler's opinion no weight. In his assessment, Dr. Winkler identified functional limitations stemming from degenerative disc disease of the entire cervical

spine with radiculopathy down the right arm. However, the ALJ relied on the only objective tests. A February 24, 2011 MRI report stated that Wilson suffered from a "mild" (a term Dr. Winkler leaves out) degenerative disc space at vertebrae C5-C6 (as opposed to the entire spine). Also, Dr. Winkler omitted another objective medical finding: that Wilson underwent nerve conduction studies on February 28, 2011, which indicated no nerve damage. The ALJ expressly concluded that "[t]hese rather mild findings are not capable of causing the amount of pain and functional limitations as [Wilson] testified about."

It is easy to see why the ALJ did not find Dr. Winkler to be credible. After all, Dr. Winkler may never have seen Wilson, and even if he had examined her, he did not personally record Wilson's medical history, and Dr. Winkler misconstrued the objective medical findings as shown in this record. "Social Security Administration regulations direct administrators . . . to give more weight to the opinions of sources who have actually examined the claimant than to the opinions of sources who have not done so." *Blaim v. Comm'r of Soc. Sec.*, 595 F. App'x 496, 498-99 (6th Cir. 2014) (citing 20 C.F.R. § 416.927(d)(1)-(2)). Moreover, Dr. Winkler's assessment included other inconsistencies. For instance, Dr. Winkler indicated that Wilson could lift only less than ten pounds. But at her hearing before the ALJ, Wilson testified that she could lift an object weighing about eight pounds, but she could not lift more than fifteen or twenty pounds.

The ALJ instead credited the opinion of Dr. John Woods, who examined Wilson at her attorney's request and specifically reviewed Wilson's MRI and nerve conduction studies. Dr. Woods determined that Wilson's "claims of neck and low back pain are out of proportion to the relatively modest abnormalities seen on her cervical and lumbar MRI scan" and that Wilson's "claims of paresthesias and loss of sensation in her extremities simply are not borne out by

examination or nerve conduction testing." The ALJ further accorded great weight to the assessment from the state agency medical consultants "because their opinions that [Wilson] is capable of performing light work activity is [sic] supported by the overwhelming medical evidence of record."

Second, Wilson contends that the ALJ erred by failing to consider all of her impairments. Specifically, the ALJ only provided a "passing nod" to Wilson's mental impairments and failed to consider Wilson's pain, weakness, and limitations related to her cervical and lumbar spinal disorder and peripheral neuropathy. The ALJ's decision belies Wilson's assertion. The ALJ devoted extensive analysis to Wilson's depression and general anxiety disorder, determining that those impairments "do not cause more than minimal limitation in [Wilson's] ability to perform basic mental work activities and is [sic] therefore nonsevere." In reaching this conclusion, the ALJ emphasized that Wilson had never been psychiatrically hospitalized, Wilson's outpatient counseling sessions indicated that her anxiety was due to physical complaints, Wilson's final counseling session indicated that her depression and anxiety had decreased, Wilson's mental status exam was unremarkable, and a psychological consultative examination report by Richard Spurling, Ph.D., suggested that Wilson did not have a mental impairment that prevented her from working. Furthermore, as explained previously, the ALJ explicitly considered Wilson's alleged symptoms stemming from her spinal disorder and peripheral neuropathy, but determined that those symptoms were inconsistent with the objective medical evidence and the determinations of multiple physicians.

Third, Wilson avers that the ALJ erred by failing to address whether Wilson did met certain regulatory listings. When addressing an individual's disability claim, the ALJ considers the medical severity of an impairment by evaluating whether the impairment meets or equals one

of the listings in the Social Security regulations. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Wilson

argues that the ALJ failed to specifically address the regulatory listing for disorders of the spine

and for valvular heart disease. But Wilson's counsel did not mention those particular listings at

Wilson's hearing before the ALJ, and Wilson offers no evidence that those listings applied to

her. The ALJ was therefore not obligated to discuss those specific listings. *See Malone v.

Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (rejecting the claimant's assertion

that the ALJ had to specifically discuss a particular listing where the claimant did not argue that

he had a listed impairment at his administrative hearing); *see also Walker v. Barnhart*, 72 F.

App'x 355, 357 (6th Cir. 2003) (holding that a claimant who did not assert a disability claim

under a specific regulatory listing was "not entitled to an award of benefits under that listing").

Fourth, Wilson claims that the ALJ erred by issuing a "boilerplate" statement assessing

Wilson's credibility concerning her symptoms and their functional effects. In determining

whether a claimant is disabled, the ALJ must consider all of the claimant's symptoms, including

pain, and evaluate whether those "symptoms can reasonably be accepted as consistent with the

objective medical evidence and other evidence." 20 C.F.R. § 404.1529. The ALJ's decision

"must contain specific reasons for the finding on credibility, supported by the evidence in the

case record, and must be sufficiently specific to make clear to the individual and to any

subsequent reviewers the weight the adjudicator gave to the individual's statements and the

reasons for that weight." SSR 96-7P, 1996 WL 374186, at \*2 (July 2, 1996).

In assessing Wilson's credibility, the ALJ expressly noted that Wilson's symptoms did

not square with the objective clinical findings. "The absence of sufficient objective medical

evidence makes credibility a particularly relevant issue, and in such circumstances, this court

will generally defer to the Commissioner's assessment when it is supported by an adequate

basis." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). As explained above, the ALJ deemed the "rather mild findings" of the February 2011 MRIs of Wilson's cervical and lumbar spine and the February 2011 nerve conduction studies of Wilson's upper and lower extremities as "not capable of causing the amount of pain and functional limitations as the claimant testified about." This adequately supported the ALJ's conclusion that Wilson's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment."

Lastly, Wilson argues that the ALJ erred by failing to confirm whether the vocational expert's testimony was consistent with the Dictionary of Occupational Titles. Because Wilson did not raise this issue before the district court, it is waived. *See Schiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649-50 (6th Cir. 2013).

For the foregoing reasons, we **AFFIRM**.